## LEWIS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4071.

Circuit Court of Appeals, Third Circuit.

Feb. 16, 1931.

James McMullan and Arthur G. Dickson, both of Philadelphia, Pa. (Dickson, Beitler & McCouch, of Philadelphia, Pa., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Shelby S. Faulkner and Dean P. Kimball, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge.

While on its face this petition for review of an order of the United States Board of Tax Appeals, redetermining tax deficiencies, appears to concern only the petitioner, the proceeding is a test case affecting like deficiency determinations with respect to all five members of a partnership, arising from their manner of conducting the business of public shorthand reporting and their method of making returns for income tax purposes.

Guilbert & Lewis, which we shall call "the firm," was under contract to report cases in the United States District Court and was employed from time to time in reporting sundry legal, quasi legal and non-legal proceedings. Admittedly its income from these sources was "taxable income."

The firm was also engaged to act as official stenographer for the Public Service Commission of Pennsylvania and the Board of Viewers of Philadelphia County, both public

bodies with power to pay, as they did pay, for such services from public funds. It was claimed that the partnership income from these two sources, being income of an employee of governmental instrumentalities, is exempt from federal taxation, hereafter referred to as "exempt income."

In the conduct of its business the firm maintained offices and an office force involving expenses normally incident to such a business. These expenses (which were substantial) were incurred in earning both its taxable income and exempt income but the several items of expense were not allocated on the books to the respective sources of income.

The firm filed annually a partnership income tax return in which it computed net taxable income by omitting altogether the exempt income (which was large) and deducting from gross taxable income (which was small) all the ordinary and necessary expenses of the partnership incurred in carrying on its entire business, that is, in earning both taxable income and exempt income, with the result that an annual net loss was disclosed and distributed to each partner in proportion to his interest in the partnership.

Coming to the partners, it appears that the petitioner at one time and two of his partners at other times were appointed official stenographers of the Court of Common Pleas, Number Four, of Philadelphia County. For this service they received fixed salaries paid from public funds which they did not turn over to the firm but retained as their own. They were also entitled to certain money received from the sale of copies of testimony to litigants which was handed to the firm and returned by it as taxable income. The partners regarded these state salaries as exempt income and therefore left them out of the computations in their 1919, 1920, 1921 and 1922 returns. But they included in their returns the expenses of earning this claimed exempt income, not by deducting them from the (omitted) exempt income to which they were related but by deducting them from taxable income derived from other sources. And in addition, each partner in his tax returns, under the heading "income from partnerships," set up the amount of his distributive share of the partnership's net loss and thus reduced his tax.

In this situation the Board of Tax Appeals, by its order of redetermination, found certain deficiencies in the returns of all partners for certain years based on a finding of fact, and on at least one conclusion of law,

that the firm in its capacity of stenographer for the Public Service Commission and the Board of Viewers for Philadelphia County was not an officer or employee of a government, state or county, and that accordingly the compensation it received for services rendered those two bodies was not exempt income but was taxable income. This finding did two things: It transmuted the firm's reported net loss into a taxable net profit and necessarily withdrew from the partners the right to deduct in their personal returns the proportions of the partnership net loss which had been improperly determined and distributed to them.

With respect to the partners the Board found that their employment by the Court of Common Pleas was within the general law exempting from income tax their compensation for services rendered as officers or employees of a state or a political sub-division of a state. But the Board held as matter of law that the petitioner and his two partners could not, in determining net taxable income, deduct from their gross taxable income the expenses incurred in earning the exempt income but that the expenses incident to earning income of each kind should be allocated to and deducted from them respectively, which the Commissioner did in determining the deficiencies by making deductions for expenses from both taxable income and exempt income in the proportions they bore to the whole income.

 No one complains of the Board's finding that the petitioner and certain of his partners were government officers or employees when acting as official court stenographers and that, speaking generally, their salaries so earned were exempt from income tax. That is the first fixed fact in a valid computation of the tax. The next essential fact, disputed yet found by the Board and now to be established on this review, is the character of the employment of the firm by the Public Service Commission and the Board of Viewers of Philadelphia County and, accordingly, the character of the firm's income from these sources, for on this depends the partnership loss or profit distributable to the partners. Although the decision of the Board, that the firm was not in either instance a governmental employee rendering its income exempt, was made before the decision in Lucas v. Reed, 281 U. S. 699, 50 S. Ct. 352, 74 L. Ed. 1125, it was made after Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384, on which the Supreme Court grounded the Lucas-Reed decision. We hold that Metcalf & Eddy v. Mitchell, rules this case on

its facts and that the finding of the Board in this regard must be sustained.

 With these facts established and the claimed factor of exempt income out of the way, the return of the firm can easily be adjusted as the Commissioner did it. Thus we arrive at what is the main question in the case affecting the petitioner, a partner, with respect to whom there are now three fixed factors in the tax computation—taxable income derived from one source, exempt income derived from another, and disallowance of his proportion of the firm's reported net loss. The question is:

Was the petitioning taxpayer, in ascertaining net taxable income, entitled to deduct from his gross taxable income the expenses incurred in earning his exempt income?

The petitioner says that he was so entitled, and relies upon the now familiar provision of several revenue acts (in this case, section 214(a) (1) of the Revenue Acts of 1918 and 1921 [40 Stat. 1066 and 42 Stat. 239]) to the effect

"That in computing net income there shall be allowed as deductions [from gross income]:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."

Oddly enough neither party has been able to find and cite decisions, authoritative or persuasive, in support of his position; due perhaps to the fact that never before was such a deduction made and litigated. The petitioner, standing squarely on the statute, makes his main argument by emphasizing the words "All" and "any"—"All" the necessary expenses incurred in carrying on "any" business may be deducted, and insisting that his official shorthand "business" and "expenses" are embraced within these terms. The respondent's main argument is directed to illustrations of the evil effect of a rule other than that for which he contends. And so the Board was left to decide the question.

We affirm the Board's ruling against the petitioner on what seems to us the common sense meaning of the words of the statute when read not alone but in connection with the law of tax exempt state salaries, for it must be assumed that when the Congress enacted the statutory tax law it had in mind the general law excepting state salaries which it could not disturb, and, indeed, did not attempt to disturb.

Section 1211 of the Revenue Act of 1926 (26 USCA § 1065b), providing for the refund

of state salaries, was the first statutory recognition by the Congress of the law decided long before that the federal government is without power to levy and collect a tax upon the compensation of officers of a state. Collector v. Day, 11 Wall. 113, 20 L. Ed. 122. In so recognizing the general law it is evident from the wording of section 1211 that the Congress did not intend to refund, as exempt from taxation, the income of any trade or business derived from serving a state but that it intended, as its words declare, to refund (because exempt) "amounts received by (any individual) as compensation for personal services as an officer or employee of any state or political subdivision thereof," which in plain words means exemption only of salaries paid for personal services.

Ordinarily personal service is not a trade or business involving expenses, yet in this case the petitioner's service as court stenographer did involve expenses in rendering it and in earning the salary. What is exempt? Income. What income? That which the petitioner earned. What did he earn? The difference between his official salary and his official expenses. That is the way income is figured for taxation purposes; why not for exemption purposes? But for the exemption accorded by general law, the statute would have taxed the petitioner's salary; yet, even so, it would have taxed only the difference between what he received for the personal service and what it cost him to render it. Therefore it would seem that this difference between salary income and expense outgo, being the thing which otherwise the act would tax, must be the thing which the general law exempts.

Although "gross income" includes "gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind" (section 213(a), of the Revenue Acts 1918 and 1921 (40 Stat. 1065 and 42 Stat. 237), it does not, at least according to departmental practice, include exempt income from salaries of state employees and officials; and so, in calculating taxable net income, the deduction of ordinary and necessary expenses incurred in carrying on any trade or business (section 214(a) (1) incident to earning such gross taxable income must not include expenses incident to earning income exempted from taxation by general law. If this were not so and if the petitioner should prevail in his contention that expenses of earning tax exempt income may be deducted from gross taxable income, the law exempting state salaries from taxation must be construed as exempting not only the whole salary (omitted from the return) but also a part of other income (convertible into taxable net) equal to the expenses incurred in earning the salary. Thus there would be the paradox of an exemption of taxable net income.

■■ And, finally, the petitioner complains of error in the Board's procedure resulting in what he conceives to be the loss of a substantive right. The facts are these:

The Commissioner disallowed the deduction of that part of the petitioner's ordinary and necessary expenses which were allocated to exempt income. To try out this one question the petitioner appealed to the United States Board of Tax Appeals on a stipulation of facts wherein the parties agreed (without stating the facts) that the firm's income from the State of Pennsylvania and its instrumentalities was exempt income. The Board, regarding this as a stipulation not of facts but of a legal conclusion based on facts which, though known to the Commissioner, were not disclosed to the Board, ordered the cause upon the calendar for the taking of evidence. The petitioner, without objection, produced testimony that disclosed a situation —beyond that disclosed by the stipulation— whose involved relations we have attempted to describe and out of which were set free the several new questions calling for decisions which in the Board's mind were essential to a lawful determination of the original question. Of course, if all parties had stood on the stipulation, the decision of the Board would have been different—and it would have been wrong. So far as the Board's departure from the stipulation was mere matter of procedure, certainly this court will have nothing to say in view of the character of that tribunal and particularly in view of the fact that this court has no supervisory jurisdiction over it. We would touch the matter only if by its departure from the stipulation a right of the petitioner has been invaded or lost. We cannot say that such was the case under the circumstance that the petitioner, by not objecting, acquiesced. Nor are we certain that, even if objecting, he could have avoided producing testimony so obviously necessary to a decision according to the very right of the matter.

The order is affirmed.